# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

WILLIAM BURKETT, *et al.*,           )
                                     )           Case No. 3:24-cv-506
    *Plaintiffs*,             )
                                     )           Judge Atchley
v.                                   )
                                     )           Magistrate Judge Poplin
CHARLES R. MILLIGAN, *et al.*,       )
                                     )
    *Defendants*.             )

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Summary Judgment [Doc. 34]; Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Motion for Summary Judgment [Doc. 36]; Defendants' Motion for Summary Judgment [Doc. 37]; Defendants' Request for Judicial Notice [Doc. 40]; Defendants' Motion in Limine [Doc. 46]; and Plaintiffs' Motion to Continue Trial & for Amended Scheduling Order [Doc. 53]. For the following reasons, the Requests for Judicial Notice [Docs. 36, 40] are **GRANTED**; Plaintiffs' Motion for Summary Judgment [Doc. 34] is **DENIED**; Defendants' Motion for Summary Judgment [Doc. 37] is **GRANTED**; Defendants' Motion in Limine [Doc. 46] is **DENIED AS MOOT**; and Plaintiffs' Motion to Continue [Doc. 53] is **DENIED AS MOOT**.

### I.     BACKGROUND

Defendants Charles R. Milligan and Anna Milligan own certain real property in the German Creek Cabin Site Subdivision in Grainger County, Tennessee (hereinafter the "Milligan Property"). [Doc. 33-2]. Defendants list the Milligan Property for short-term rental on Airbnb and VRBO. [Doc. 38-4 at ¶ 2]. More specifically, Defendants allow groups of up to nine individuals to rent out the Milligan Property for the renters' exclusive use for periods of two nights up to thirty

1

days, provided the renters meet certain requirements.[1] [*See* Doc. 33-1 at 68–69; Doc. 38-4 at ¶¶ 3–5, 7]. Several of Defendants' neighbors—the plaintiffs in this case—believe this conduct violates a restrictive covenant in the Milligan Property's chain of title.[2] Defendants disagree, and this disagreement ultimately ripened into this litigation.

Plaintiffs filed suit in the Circuit Court for Grainger County, Tennessee, generally seeking (i) declaratory and injunctive relief that would bar Defendants from using the Milligan Property for short-term rentals and (ii) damages. [*See* Doc. 1-1 at 5–17]. Defendants timely removed the case to this Court and successfully defeated a motion to remand. [*See* Docs. 1, 18]. Now, Plaintiffs and Defendants have filed competing motions for summary judgment, [Docs. 34, 37], both of which are ripe for review. Plaintiffs and Defendants have also each requested the Court take judicial notice of certain dictionary definitions as it interprets the at-issue restrictive covenant [Docs. 36, 40]; Defendants have filed a Motion in Limine. [Doc. 46]; and Plaintiffs have requested the Court continue the trial date and related deadlines in this matter. [Doc. 53].

The Court will first address the parties' Requests for Judicial Notice [Docs. 36, 40]. Then, it will turn to their competing Motions for Summary Judgment [Docs. 34, 37]. And because the adjudication of these motions will completely resolve this case, the Court will end by denying Defendants' Motion in Limine [Doc. 46] and Plaintiffs' Motion to Continue Trial & for Amended Scheduling Order [Doc. 53] as moot.

---

[1] These requirements include the renter being at least 25 years old and that they and their guests agree to abide by Defendants' "house rules." [Doc. 38-4 at ¶ 7].

[2] These neighbors are Plaintiffs William Burkett, Gail Burkett, Sim Stewart, Karen Stewart, James Dawson, Rebecca Dawson, Teddy White, Deborah White, Frank B. Little, Jr., Jennifer I. Little, Jeffrey Taylor, Ashley Taylor, Parker James Smith, Kelci B. Smith, Teresa Graniczny, Brantley Stewart, Katherine Moses Stewart, Jessica Greenlee, and Johnny Greenlee. [*See* Doc. 1-1 at 6–7, 18–53]. Plaintiffs Frank B. Little, Jr. and Jennifer I. Little bring suit as trustees of the Frank B. Little Revocable Living Trust and the Jennifer I. Little Revocable Living Trust, which are the owners of record for the German Creek Cabin Site property where they reside. [*Id.* at 6, 33–36].

2

## II.    REQUESTS FOR JUDICIAL NOTICE

Plaintiffs and Defendants each request the Court take judicial notice of certain dictionary definitions pursuant to Federal Rule of Evidence 201(b). [*See generally* Docs. 36, 40]. Neither opposes the other's request.

Rule 201(b) states "[t]he [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "A dictionary is one of those sources whose accuracy cannot reasonably be questioned and, as a general rule, courts may consult a dictionary at any stage of the litigation to determine the meaning of words and phrases." *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 782 (S.D. Ohio 2009); *see also Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 944 (6th Cir. 1993) (finding it appropriate for a district court to take judicial notice of the dictionary definition for a relevant term). Accordingly, the parties' Requests for Judicial Notice [Docs. 36, 40] are **GRANTED**. The Court will consider their proffered dictionary definitions as it interprets the meaning of the at-issue restrictive covenant.

## III.    MOTIONS FOR SUMMARY JUDGMENT
### A.  Standard of Review

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must

3

view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

### B. Analysis

The restrictive covenant at the heart of this case states, in relevant part:

4

> FOR THE BENEFIT OF ALL PURCHASERS OF LOTS IN THE GERMAN
> CREEK CABIN SITE SUBDIVISION…AND IN ORDER TO FOSTER THE
> DEVELOPMENT AND PROTECT THE VALUE OF ALL OF SAID LAND FOR
> PRIVATE RESDIENCE PURPOSES, THE GRANTEE (1) WILL USE THE
> LAND HEREIN CONVEYED…FOR PRIVATE RESIDENCE PURPOSES
> ONLY….

[Doc. 1-1 at 62–63 (capitalization in original)]. Defendants do not dispute this covenant applies to the Milligan Property, nor do they claim that lack of notice or some other defense excuses them from complying with its terms. Instead, they assert the covenant does not unambiguously prevent them from offering the Milligan Property for short-term rental, meaning they are allowed to do so. Plaintiffs vehemently disagree. They argue the covenant clearly prohibits short-term rentals and that Defendants should be enjoined from using the Milligan Property for such a purpose. After careful consideration, the Court finds Defendants have the better argument.

> 1. *Tennessee law disfavors restrictive covenants and strictly construes them in a manner which advances the unrestricted use of property.*

Under Tennessee law, which the parties agree governs in this case, "the interpretation of restrictive covenants, like the interpretation of other written contracts, is a question of law[.]" *Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 618 (Tenn. 2023) (citation modified). "[R]estrictive covenants are not favored in Tennessee because they are in derogation of the right of free use and enjoyment of property." *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007). Consequently, courts "strictly construe[]" them to only cover those activities "clearly and expressly prohibited by [the covenant's] plain terms." *Id.* "When the terms of a covenant may [reasonably] be construed in more than one way, courts must resolve any ambiguity against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property." *Pandharipande*, 679 S.W.3d at 620 (quoting *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 481 (Tenn. 2012)). But as with traditional contract interpretation, a court cannot

5

create an ambiguity in a restrictive covenant where none exists. *See id.* (noting that restrictive covenants are interpreted like contracts); *Rogers v. First Tennessee Bank Nat. Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987) ("Neither the parties nor the courts may create an ambiguity in the contract when no such ambiguity exists and then apply rules of construction to favor one party to the agreement."). Nor can a court declare a restrictive covenant ambiguous without first exhausting "all traditional tools of interpretation[.]" *Pandharipande*, 679 S.W.3d at 620.

> 2. *Tennessee courts have thrice held restrictive covenants requiring that property be used for "residential purposes" only do not bar short-term rentals.*

The Tennessee Supreme Court relied on the foregoing principles in *Pandharipande v. FSD Corporation* to evaluate whether a restrictive covenant stating "each Lot shall be used for residential and no other purposes" prohibited the plaintiff from using his property for short-term rentals. *See generally* 679 S.W.3d 610 (Tenn. 2023). The *Pandharipande* Court began its analysis "by consulting dictionary definitions of the phrase's key terms: 'used,' 'residential,' and 'purposes.'" *Id.* at 623. It found the meaning of the term "used" was reasonably clear, although "it [was] unclear *whose* use of the property [was] relevant" as the restrictive covenant employed the term "used" as "a passive verb with no subject." *Id.* (emphasis in original). The *Pandharipande* Court then looked to the term "purposes" and also found its definition "reasonably clear." *Id.* That just left the term "residential." Consulting a variety of dictionaries from around the time the restrictive covenant was created, the *Pandharipande* Court found it was ambiguous whether the term "residential" and related terms like "residence," "reside," and "resident" encompass short stays or whether they require a certain degree of permanence. *See id.* at 623–24. This ambiguity— combined with the fact that short-term renters engage in largely the same activities as permanent residents (e.g., "sleeping, eating, bathing, [and] relaxing")—meant the *Pandharipande* Court was

"unable to conclude, based on dictionary definitions alone, that the [at-issue] covenants clearly and expressly prohibit[ed] [the property owner] from leasing his property for short terms of two to twenty-eight days." *Id.* at 625.

Thus, the *Pandharipande* Court looked to the applicable restrictive covenants as a whole to see if they provided additional clarity as to the permissibility of short-term rentals. The *Pandharipande* Court first looked to the term "Lot," which the restrictive covenants themselves defined as "a portion ... of the Properties ... intended for any type of independent ownership for construction and *use as a residence* by a single family." *Id.* (ellipses and emphasis in original). The *Pandharipande* Court did not find this definition helpful in evaluating whether the restrictive covenants prevented short-term rentals because, as it had already discussed, "dictionary definitions of 'residential' and related words d[id] not unambiguously exclude transient stays. So the fact that a 'Lot' must be intended for 'use as a residence by a single family' d[id] not necessarily mean that it must be used as a permanent or long-term residence." *Id.*

The *Pandharipande* Court next looked to a separate provision of the restrictive covenants that stated, "no gainful profession, occupation, trade *or other nonresidential use* shall be conducted in any Lot." *Id.* (emphasis in original). Interpreting the phrase "other nonresidential use" to mean "an activity regularly conducted on the property as a means of earning money[.]" the *Pandharipande* Court found that short-term rentals did not fall within the scope of the prohibition, stating that while "using a property as a short-term rental ordinarily generates income for the owner…the only activities that are regularly conducted on the property when it is being used as a short-term rental are things like eating and sleeping[,]" i.e., residential activities. *Id.* Thus, short-term rentals did not qualify as a prohibited "nonresidential use" of the property. *See id.*

7

Finally, the *Pandharipande* Court looked to a separate provision of the restrictive covenants describing a property owner's ability to delegate certain rights to "tenants," finding this presupposed some types of rentals were permitted, but that it provided little clarity as to the permissibility of short-term rentals specifically. *Id.* at 625–26. The *Pandharipande* Court found this lack of clarity reinforced its conclusion that the restrictive covenants were ambiguous and did not clearly prohibit short-term rentals. *Id.* at 626.

Having concluded the restrictive covenants—whether viewed in their entirety or in the specific context of the residential use restriction—did not unambiguously prohibit short-term rentals, the *Pandharipande* Court next discussed how other states' courts have addressed similar restrictive covenants, noting that many courts have held "similar residential-purposes provisions either unambiguously allow short-term rentals or do not unambiguously prohibit them[.]" *Id.* at 626–28 (emphasis omitted). The *Pandharipande* Court then went on to "join those courts that have found residential-purposes provisions ambiguous with respect to whether short-term rentals are allowed" and resolve this ambiguity in favor of the unrestricted use of property. *Id.* at 628. Said differently, the *Pandharipande* Court held that because the "residential-purposes provision" did not clearly prohibit a property owner from using their property as a short-term rental, such use was permitted.[3]

In the years since *Pandharipande*, the Tennessee Court of Appeals has been called upon at least twice to evaluate the effect of other restrictive covenants limiting property's use to

_____

[3] The *Pandharipande* Court then went on to hold that a later amendment to the restrictive covenants setting a thirty-day minimum on lease lengths did prohibit short-term rentals. *See* 679 S.W.3d at 628. Because no similar restrictive covenant is at issue in this case, this portion of the *Pandharipande* Court's analysis is not discussed further.

"residential purposes" on the permissibility of short-term rentals. And in both cases, the Tennessee Court of Appeals sided in favor of allowing short-term rentals.

*First*, the Tennessee Court of Appeals was asked in *Lone Mountain Shores Owners Association, Inc. v. Bennafield* to decide whether the following provisions of a set of restrictive covenants prohibited property owners in the Lone Mountain Shores Subdivision from using their property for short-term rentals:

> Section 2.14 **"Single Family Residential Purposes"** shall mean the property, consisting of just one primary Dwelling and all ancillary buildings on it shall be occupied by just one legitimate single housekeeping unit as distinguished from unaffiliated individuals or groups occupying a motel, hotel, bed & breakfast, or boardinghouse. Additionally, allowances are made for one accessory living quarters, such as a mother-in-law suite, without violating the "single family residential use" provided this secondary living quarters meets the requirements of Section 6.05 of these Covenants. Any rental accommodations and services such as those provided by hotels, motels, bed & breakfasts, rooming or boarding houses, apartment buildings or condominiums are excluded by this definition.
>
> * * *
>
> Section 6.04 **Residential Use Only.** All Lots shall be used for single family residential purposes only, and no commercial use is permitted. This restriction is not to be construed to prevent rental of any Lot or any dwelling for private single family residential purposes or to prevent an Owner from conducting home occupations in a Dwelling, provided such occupations: (a) are subordinate to the primary residential use; (b) occupy no more than twenty percent (20%) of the Dwelling's floor area; and (c) employ not more than two (2) persons.
>
> Examples of prohibited commercial uses of a Lot or any dwelling include providing the services of or operating as a restaurant, an inn, a boarding house, or a bed-and-breakfast or providing other atypical rental services of a commercial nature.
>
> Examples of non single family residential purposes uses of a Lot or any dwelling include, but are not limited to: occupancy by two or more unaffiliated individuals or groups that function as independent housekeeping units; owners or their agents occupying any part of the property at the same time as renters; utilizing the Lot or any dwelling as a fraternity, sorority or dorm complex; or using the Lot or any dwelling as a Group Home or institution of any kind.
>
> * * *
>
> Section 6.07 Rental. Lots and Dwellings may be rented only for private single-family residential purposes subject to the following provisions:

9

> a. The renting to unaffiliated individuals or groups at the same time is prohibited;
> b. Tenants are required to abide by all [Lone Mountain Shores] Governing Documents;
> c. Owners are responsible for the actions of their tenants. Each Owner shall take appropriate steps and should put in place additional rules, limitations and restrictions as necessary to ensure that tenants do not conduct deleterious activities or otherwise create a nuisance to other Owners;
> d. All rules, regulations, or use restrictions of these Covenants promulgated pursuant hereto that govern the conduct of Owners and that provide for sanctions against Owners also apply to all occupants of any Lot.

No. E2024-00569-COA-R3-CV, 2025 WL 1627229, at *2 (Tenn. Ct. App. June 9, 2025) (emphasis in original). The Tennessee Court of Appeals, like the trial court before it, found these provisions did not unambiguously bar short-term rentals and that, as a result, it was permissible to use property in the Lone Mountain Shores Subdivision for such a purpose. *See id.* at *9.

To reach this conclusion, the Tennessee Court of Appeals first considered whether Section 2.14's definition of "single family residential purposes" clearly excluded short-term rentals. *See id.* at *5–7. The Lone Mountain Shores Owners Association argued it did, asserting that Section 2.14 excluded short-term rentals by implication when it stated that "[a]ny rental accommodations and services such as those provided by hotels, motels, bed & breakfasts, rooming or boarding houses, apartment buildings or condominiums are excluded" from the definition of "single family residential purposes." *Id.* at *5–6. The Owners Association claimed that because short-term rentals operate similarly to hotels, motels, and the like (e.g., providing overnight lodging billed daily; providing housekeeping or similar services; and providing complimentary consumables to guests), the drafters of the restrictive covenants must have intended to exclude short-term rentals from the definition of "single family residential purposes." *See id.*

The Court of Appeals was not convinced. It noted that while short-term rentals shared common characteristics with *some* of Section 2.14's expressly excluded uses (hotels, motels, etc.),

10

those commonalities did not extend to all the excluded uses. *See id.* at \*6. Specifically, Section 2.14 excluded condominiums and apartment buildings—which do not provide the kind of services seen in hotels, motels, and the like—from the definition of "single family residential purposes." *See id.* at \*6–7. This led the Court of Appeals to evaluate whether there was a separate common thread underlying *all* the expressly excluded uses. The Court of Appeals found this thread in the trial court's conclusion that each of the expressly excluded uses "pertain[ed] to buildings or facilities that contain many parts or rooms which are used by unaffiliated groups or individuals." *See id.* at \*7. Considering this, Section 2.14 in its entirety, and the fact that other provisions of the restrictive covenants (including Sections 6.04 and 6.07) prohibited or otherwise restricted "the number of unaffiliated guests or occupants allowed on a property at any given time," the Court of Appeals found it reasonable to interpret Section 2.14's definition of "single family residential purposes" as excluding the simultaneous use of property by unaffiliated groups rather than prohibiting any use that provided short-stay accommodations and related services. *See id.* at \*7–8. Under this reasonable interpretation, property owners would be permitted to use their property for short-term rentals, meaning the Court of Appeals was required to hold that such use was permissible under the applicable restrictive covenants. *See id.* at \*8–9.

*Second*, the Tennessee Court of Appeals was asked in *Salem v. Galbraith* to decide, among other things, whether restrictive covenants dictating that property "be used for residential purposes only" and prohibiting "trade and commercial activity" on the relevant properties prohibited short-term rentals. No. E2024-00337-COA-R3-CV, 2025 WL 3632698 (Tenn. Ct. App. Dec. 15, 2025). The Court of Appeals found these restrictive covenants "mirror[ed] the 'residential and no other purposes' covenant found ambiguous in *Pandharipande*" and that *Pandharipande* therefore

controlled. *See id.* at *4–5. Accordingly, the Court of Appeals held the restrictive covenants did not bar property owners from using their properties for short-term rentals. *See id.* at *5.

*     *     *

In short, Tennessee courts have held restrictive covenants requiring that property be used for "residential and no other purposes[;]" "single family residential purposes" only; and "residential purposes only" do not clearly prohibit short-term rentals. And because restrictive covenants only cover those activities "clearly and expressly prohibited by [the covenant's] plain terms[,]" *Williams*, 219 S.W.3d at 324, this lack of a clear prohibition means short-term rentals are permitted under the foregoing covenants. Now, this Court must decide whether a similar covenant, one requiring that property be used for "private residence purposes only," calls for the same result.

> 3. *The restrictive covenant requiring that Defendants use the Milligan Property "for private residence purposes only" does not bar short-term rentals.*

The restrictive covenant at issue in this case requires that Defendants use the Milligan Property "for private residence purposes only[.]" [Doc. 1-1 at 62–63 (capitalization altered)]. This phrase is not defined anywhere in the German Creek Cabin Site Subdivision restrictive covenants, so to determine its meaning, the Court must look to contemporary dictionary definitions of the relevant terms. *See Pandharipande*, 679 S.W.3d at 623.

Starting with "purposes" and "only," the Court agrees with the parties that their meanings in the context of the "private residence purposes only" restriction are reasonably clear. [*See* Doc. 35 at 17 n. 14; Doc. 38 at 16; Doc. 42 at 7]. "Purpose" means "[t]he object, effect, or result aimed at, intended or attained; as, to speak to the purpose." *Purpose*, WEBSTER'S COLLEGIATE DICTIONARY (3rd ed. 1930); *see also Purpose* BLACK'S LAW DICTIONARY (4th ed. 1951) ("That which one sets before him to accomplish; an end, intention, or aim, object, plan, project");

12

*Purpose*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (unabridged ed. 1949) ("That which a person sets before himself as an object to be reached or accomplished; the end or aim to which the view is directed in any plan, measure, or exertion; intention; design."). And "only" means "solely; merely; for no other purpose; at no other time; in no otherwise; alone; of or by itself; without anything more; exclusive; nothing else or more." *Only*, BLACK'S LAW DICTIONARY (4th ed. 1951); *see also Only*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (unabridged ed. 1949) ("1. In a manner or for one purpose alone; simply; merely; barely….2. Solely; no other than.").

Looking next to the term "residence," its meaning is less clear. Specifically, "residence" suffers from the same issue as "residential" in *Pandharipande*: it is ambiguous whether the term requires a degree of permanence. "Several dictionaries define the term[] 'residence'…in a manner that connotes permanence." *Pandharipande*, 679 S.W.3d at 624; *see also Residence*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (unabridged ed. 1949) ("1. The act of residing or dwelling in a place for some continuance of time…2. Place of abode; a dwelling; a permanent habitation."); But at the same time, other definitions of "residence" and related terms appear to encompass shorter stays as well. *See Pandharipande*, 679 S.W.3d at 624; *Residence*, BLACK'S LAW DICTIONARY (4th ed. 1951) (defining "residence" as "[a] factual place of abode. Living in a particular locality. It requires only bodily presence as an inhabitant of a place" and stating in the accompanying commentary that "[r]esidence means living in a particular locality, but domicile [a different term] means living in that locality with the intent to make it a fixed and permanent home" (internal citations omitted)); *Residence*, WEBSTER'S COLLEGIATE DICTIONARY (3rd ed. 1930) ("The place or house where one resides; dwelling place…Syn. Sojourn, stay; dwelling, mansion."); *Sojourn*, WEBSTER'S COLLEGIATE DICTIONARY (3rd ed. 1930) (defining "sojourn," a synonym of

13

"residence" as "[a] a temporary residence; hence: a delay; stay."). Given these competing definitions, the Court cannot say that limiting the Milligan Property's use to "residence purposes" unambiguously prohibits short-term rentals.

Turning to the term "private," it provides some additional clarity regarding the type of "residence purposes" the Milligan Property may be used for, but it does not resolve the ambiguity surrounding the permissibility of short-term rentals. Plaintiffs argue the use of the term "private" demonstrates short-term rentals are prohibited because such use opens the property to the general public. [*See* Doc. 35 at 13 n.5, 16 (citing *Private*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (unabridged ed. 1949))]. But this argument ignores that only those individuals who meet certain requirements may rent the Milligan Property and that once the Milligan Property is rented, the renters have exclusive use of the Property. [*See* Doc. 38-4 at ¶¶ 3–5, 7]. Thus, and contrary to Plaintiff's position, the Milligan Property is not open to the general public. Rather, it is used exclusively by select individuals and groups for specific periods of time, much like a restaurant may rent out a "private" room for birthdays and anniversaries or a film club may arrange a "private" screening of a particular movie. In these circumstances, what makes the space "private" is not that it may never be used by someone else. Instead, it is that while the individual or their group is using the space, that space is "not accessible to people in general[.]" *Private*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (unabridged ed. 1949). Accordingly, while limiting use of the Milligan Property to "*private* residence purposes only" may bar Defendants from, for example, renting the Property to multiple unaffiliated individuals and groups at the same time or otherwise allowing the Property to be used for communal living, the Court cannot say this limitation unambiguously prohibits short-term rentals.

14

This, however, does not end the Court's analysis as there is one final portion of the restrictive covenant that must be addressed. The restrictive covenant states "the Grantee (1) will use the land herein conveyed…for private residence purposes only…." [Doc. 1-1 at 63 (capitalization altered)]. Plaintiffs contend that because the covenant includes the phrase "the Grantee…will use[,]" the Court must look to Defendants' specific use of the Milligan Property—rather than how any renter/occupant may use the Property—when evaluating whether the restrictive covenants have been breached. [*See* Doc. 35 at 14–15; Doc. 42 at 6 n.5, 7 n.10]. And because Defendants rent the Milligan Property out rather than use it as a personal residence, Plaintiffs contend they are not using the Milligan Property for a "private residence purpose." [*See* Doc. 35 at 14–15; Doc. 42 at 6 n.5, 7 n.10]. Plaintiffs are mistaken.

The term "use" can reasonably be interpreted to encompass a wider range of activities than Plaintiffs appear to acknowledge. "Use" means "[t]o employ; to handle, hold, occupy, or move, for some purpose[.]" *Use*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (unabridged ed. 1949); *see also Use*, WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1963) ("to put into action or service: avail oneself of: employ…"). "Employ," a key component of the definition of "use" and its synonym, in turn means "to devote to or direct toward a particular activity or person." *Employ*, WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1963). These definitions clearly encompass Defendants utilizing the Milligan Property as their own private residence. But it is not unreasonable to interpret them as also permitting Defendants to allow others to utilize the Milligan Property—such as through short-term rentals—provided that the only purposes the renters utilize the Property for are "private residence purposes." In other words, the restrictive covenant can be reasonably interpreted as requiring Defendants to dedicate the Milligan Property to "private

15

Case 3:24-cv-00506-CEA-DCP   Document 54   Filed 07/09/26   Page 15 of 17
PageID #: 1085

residence purposes only" without also requiring that Defendants themselves be the only ones permitted to utilize the Milligan Property for "private residence purposes."

This interpretation is reasonable not only based on the language of the at-issue covenant itself but also when considering the stated purpose of the German Creek Cabin Site Subdivision restrictive covenants more generally. The restrictive covenants were adopted "[f]or the benefit of all purchasers of lots in the German Creek Cabin Site Subdivision…and in order to foster the development and protect the value of all of said land for private residence purposes[.]" [Doc. 1-1 at 62–63 (capitalization altered)]. Requiring that Defendants be the only ones permitted to use the Milligan Property for "private residence purposes" would be in line with this goal. But it would also be in line with the restrictive covenants' purpose to allow Defendants to offer the Milligan Property as a short-term rental provided Defendants ensure their renters also use the Milligan Property for "private residence purposes." In either case, the Milligan Property would still be used for "private residence purposes," just like the other properties in the German Creek Cabin Site Subdivision.

Considering the foregoing and that other provisions of the German Creek Cabin Site Subdivision restrictive covenants do not shed additional light on the permissibility of short-term rentals, the Court finds it ambiguous whether the restrictive covenants' "private residence purposes only" restriction prohibits short-term rentals. Under Tennessee law, the Court "must resolve [this] ambiguity against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property." *Pandharipande*, 679 S.W.3d at 620 (quoting *Hughes*, 387 S.W.3d at 481). The Court therefore holds that the German Creek Cabin Site Subdivision's restrictive covenants do not prohibit Defendants from using the Milligan Property for short-term

16

rentals. Defendants' Motion for Summary Judgment [Doc. 37] is **GRANTED**, and Plaintiffs' Motion for Summary Judgment [Doc. 34] is **DENIED**.

## IV.    REMAINING MOTIONS

The grant of summary judgment to Defendants fully resolves this case. Accordingly, Defendants' Motion in Limine [Doc. 46] and Plaintiffs' Motion to Continue Trial & for Amended Scheduling Order [Doc. 53] are **DENIED AS MOOT**.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Motion for Summary Judgment [Doc. 36] is **GRANTED**;

2. Defendants' Request for Judicial Notice [Doc. 40] is **GRANTED**;

3. Plaintiffs' Motion for Summary Judgment [Doc. 34] is **DENIED**;

4. Defendants' Motion for Summary Judgment [Doc. 37] is **GRANTED**;

5. Plaintiffs' claims are **DISMISSED WITH PREJUDICE**;

6. Defendants' Motion in Limine [Doc. 46] is **DENIED AS MOOT**; and

7. Plaintiffs' Motion to Continue Trial & for Amended Scheduling Order [Doc. 53] is **DENIED AS MOOT**.

A separate judgment shall enter. There being no more matters to resolve, the Clerk is **DIRECTED** to close the file.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**